IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IVAN ELIJAH WILLIAMS, § | | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:13-CV-399-Y |
| | § | |
| RODNEY W. CHANDLER, Warden, | § | |
| FCI-Fort Worth, | § | |
|     Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a federal prisoner pursuant to 28 U.S.C. § 2241.

#### B. PARTIES

Petitioner Ivan Elijah Williams, Reg. No. 20005-057, is a federal prisoner incarcerated in the Federal Correctional Institution in Fort Worth, Texas (FCI-Fort Worth).

Respondent Rodney W. Chandler is Warden of FCI-Fort Worth.

C. PROCEDURAL HISTORY

Petitioner is serving a 210-month term of imprisonment for his 2001 conviction in the Southern District of Georgia, Augusta Division, for conspiracy to import cocaine and cocaine base, in violation of 21 U.S.C. § 962. *See United States v. Williams*, PACER, U.S. Party/Case Index, Criminal Docket for # 1:98-cr-00049-DHB-6, doc. #363. Petitioner's projected release date with good time credit is November 18, 2014. (Resp't App. at 7) Petitioner filed a request with the Bureau of Prisons (BOP) for a 12-month placement in a residential re-entry center (RRC) under 18 U.S.C. § 3624(c)(1), "due to his over eight thousand (8,000) hours of ongoing programming[,] in the form of Vocational Courses, an Associate Degree obtained while in BOP, and ACE courses," and supervision relocation to the Northern District of Georgia. (Pet. at 4)

The government presents the declaration of Martin Gutierrez, the Unit Manager of the Austin and Houston housing units at FCI-Fort Worth, wherein he avers, in relevant part–

3.  On January 18, 2013, Ivan Williams, Federal Register Number 20005-057, requested relocation from the district of his conviction, the Southern District of Georgia to the Northern District of Georgia (i.e., transfer the district of his supervised release). At that time the unit team first discussed with Mr. Williams a possible 151 to 180 day RRC placement in the Northern District of Georgia contingent on whether the United States Probation Office ("USPO") approved the relocation.

4.  The Supervision Release Plan proposed that he would reside with his mother, Katherine Augusta [aka Augustine] at 2633 Tullis Cove Drive, Loganville, Georgia 30052. The Supervision Release Plan, Progress Report, Judgment and Commitment Order and the Presentence Investigation Report were forwarded for approval to the USPO for the Northern District of Georgia.

5.  In a letter dated January 29, 2013, in denying his relocation request, the USPO determined that Mr. Williams failed to meet the strict criteria adopted in the Northern District of Georgia concerning relocations or transfers to the district. Specifically, the USPO stated that Mr. Williams was born in the U.S. Virgin Islands and raised by his grandparents until 1995, then moved

and lived with his father in the U.S. Virgin Islands. The denial concluded that "the offender has been in custody since 1999 and he does not have any recent substantial history with Ms. Augustine in the community and/or significant ties to this district."

6. On January 30, 2013, Mr. Williams was individually considered and review for RRC placement during his regularly scheduled Program Review using the five factors from 18 U.S.C. § 36219(b). These factors are: (1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the sentencing court; and (5) any pertinent policy statement issued by the U.S. Sentencing Commission.

7. Following a thorough review of Mr. Williams' file and applicable policy, the determination was made that placement in an RRC for 151 to 180 days was appropriate once a suitable area was identified and approved.

8. In reviewing Mr. Williams' suitability for RRC placement in Loganville, Georgia, under the first factor, the unit team believed Mr. Williams would benefit from an extended placement in that area to assist in the re-establishment of his familial connections and the development of an external social support system, while heightening his chances of securing employment and accruing funds. In accordance with the second factor, there existed no concerns with Mr. Williams' underlying offense. In considering the third factor, due to a noteworthy discipline history while incarcerated, to include being sanctioned for possession of a cell phone and for introducing alcohol into the facility, it was determined that extended RRC transitional time would be beneficial. Additionally, Mr. Williams has children and potential resulting financial obligations relating to them. The location of the children's mother is unknown. Lastly, concerning the fourth and fifth factors, there were no recommendations from his sentencing court in the Judgment and Commitment Order regarding RRC placement and no policy statements issued by the U.S. Sentencing Commission pertinent to his case.

9. However, *no final decision has been reached with respect to Williams' RRC placement*. The unit team has initially recommended him for a 151 to 180 day RRC placement, but has not memorialized this on the Form BP-210 "Institutional Referral for RRC Placement," yet because we are unable to route or process the RRC paperwork until a decision is made as to the location of release and a Supervision Release Plan is approved by the USPO. In order to be routed, the RRC referral must include the Relocation of Supervision approval, in the form of the United States Probation Office Acceptance Letter. Accordingly, an RRC referral to a district other than the

      district of conviction cannot be submitted without prior approval for supervision relocation. Mr. Williams has been repeatedly apprised of this fact.

10. Notably, one of the factors considered in making the RRC recommendation under 18 U.S.C. § 3621(b)(1) is the resources of the facility contemplated, and it is not possible to determine what facilities may be available without an approved location of release.

11. *Until a supervision release plan is approved by the USPO, no final agency RRC placement decision can be rendered.* Because the USPO for the Northern District of Georgia has denied his Supervision Release Plan, there is no RRC placement available there. Mr. Williams has been instructed on numerous occasions that he must offer up a new Supervision Release Plan that designates an alternate district of supervision. To date, he has neglected to do so.

(*Id.* at 2-4 (footnotes omitted) (emphasis added))

Petitioner appealed the unit team's recommendation, and the warden replied as follows:

This is in response to your Request for Administrative Remedy dated February 21, 2013, wherein you request a 12-month residential reentry center (RRC) placement, due to the fact that you have been incarcerated for 14-years. You are requesting this time to successfully reintegrate back into society.

. . .

A review of your Inmate Discipline History revealed on the following dates, April 4, 2012, you were sanctioned by the Disciple Hearing Officer for violating code 108, Possessing a Hazardous Tool, Use of a Cellular Phone, and on February 17, 2007, you were sanctioned for violating code 215A, Introduction of Alcohol into a Facility and code 316, Being in Unauthorized Area.

In accordance with the criteria identified in the Second Chance Act, pre-release RRC placement decisions are made on an individual basis in every inmate's case. Staff consider the factors contained in 18 U.S.C. § 3621(b), which include the resources of the facility, the nature and circumstances of the offense, the history and characteristics of the prisoner, and any statement by the court that imposed the sentence recommending a type of penal or correctional facility.

Based on the Second Chance Act of 2007, you may be eligible for an RRC placement of up to 12-months, with the concurrence of the Warden for any period in excess of

> six months. In accordance with the Second Chance Act, you were considered, by your team, for 150-to-180-day RRC placement. The unit team determined that you have no unique circumstances different than any other inmate's experience that would warrant a recommendation for RRC placement in excess of six months.

(Attach. to Pet. entitled "Part B-Response" to Remedy No. 724360-F1)

As preliminary matters, respondent asserts the petition is premature because "no final administrative decision regarding petitioner's RRC placement suitability has been rendered due to petitioner's failure to specify an approved release location," and, thus, "[h]e is challenging an RRC duration decision that remains premature and speculative." (Resp't Resp. at 1, 4-5) In the alternative, respondent asserts the petition should be dismissed because petitioner has failed to exhaust the prison's administrative remedies. (*Id.* at 5-8)

### D. RIPENESS

Respondent asserts the issue of petitioner's placement in a RRC is not ripe for judicial review because the BOP has not yet made a final decision on petitioner's RRC placement. (Resp't Resp. at 4-5) Petitioner asserts his claim is ripe for review because the BOP has made a final decision based on "obsolete policy[,] [Program Statement 7310.04,] that neither them, the Regional or National level can change." (Pet'r Pet. at 5)

Article III of the Constitution confines federal courts to the decision of "cases" and "controversies." A case or controversy must be ripe for decision, meaning that it must not be premature or speculative. Ripeness is a constitutional prerequisite to the exercise of jurisdiction. *Shields v. Norton,* 289 F.3d 832, 834-35 (5th Cir. 2002).

Gutierrez's declaration was executed on July 26, 2013, nearly six months ago. Neither party has updated the court regarding the current status of petitioner's RRC placement, and the BOP's

5

website reflects petitioner remains incarcerated at FCI-Fort Worth with a projected release date of November 18, 2004. *See* U.S. Department of Justice, Federal Bureau of Prisons/Inmate Locator, available at http://www.bop.gov/locate. (Resp't App. at 5) The undersigned can deduce from this fact that the BOP has, in fact, denied petitioner RRC placement for the full 12-month period before his projected release date and, therefore, finds the petition is ripe for review.

### E. EXHAUSTION

Respondent also asserts the issue of petitioner's placement in a RRC should be dismissed for failing to exhaust prison administrative remedies. (Resp't Resp. at 5-8) However, to require petitioner to exhaust administrative remedies at this juncture would more than likely be futile. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Even assuming petitioner did not pursue his administrative remedies through completion, it would now be too late to do so and/or would cause irreparable harm to him is he is entitled to habeas relief. Therefore, the undersigned considers petitioner's claim on the merits.

### F. DISCUSSION

Under former § 3624(c) and BOP policy and regulations, the BOP could exercise its discretion to designate an inmate to community confinement limited to the last ten percent of the sentence being served, not to exceed six months. Under the Second Chance Act, Congress amended § 3624(c) to increase placement in a RRC up to twelve months of the final months of an inmate's term of imprisonment, and requires the BOP to make placement decisions on an individual basis consistent with the criteria set forth in 18 U.S.C. § 3621(b). The criteria includes: the resources of the facility; the nature and circumstances of the offense; the history and characteristics of the

6

prisoner; any statement by the court that imposed the sentence; and any pertinent policy statement issued by the Sentencing Commission.

The Act further required the BOP to enact new regulations and policies consistent with the amended statute. Toward that end, the BOP rescinded its former regulations contained in C.F.R. §§ 570.20 and 570.21, issued new regulations in §§ 570.20 through 570.22, wherein the BOP adopted the five-factor criteria in § 3621(b) in determining an inmate's pre-release RRC placement eligibility on an individual basis and revised its policies to require the review of inmates by a unit team 17-19 months before their projected release date and limiting RRC placement beyond six months to inmates with unusual or extraordinary circumstances justifying such placement, provided the Regional Director concurs, including participation in "reentry and skills development programs." 42 U.S.C. § 17541(a)(2)(A). *See also* Program Statement 7310.04 ("Community Corrections Center (CCC) Utilization and Transfer Procedures").

The record provides evidence that BOP officials considered the five factors set forth in § 3621(b) as they related to petitioner. The result of that assessment is a recommendation that petitioner be considered for placement in a RRC for 151 to 180 days. Although petitioner disagrees with this recommendation, in a petition pursuant to § 2241, a petitioner bears the burden to plead and prove that he is in custody in violation of the Constitution and laws of the United States. 28 U.S.C. § 2241(c). Petitioner's disagreement with the recommendation regarding his placement in a RRC does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles petitioner to any guaranteed RRC placement. The Second Chance Act does not require the BOP to grant an inmate's request for RRC placement for the full twelve months, but rather, to consider an inmate's request in accordance with the Act. The duration of RRC placement is a matter

to which the BOP retains discretionary authority. *Monroe v. Chandler*, No. 4:13-CV-461-A, 2013 WL 4475984, at *2 (N.D.Tex. Aug. 21, 2013); *Burton v. Federal Bureau of Prisons*, No. 1:10-CV-586, 2011 WL 3299816, at *2-3 (E.D.Tex. June 1, 2011). Petitioner has not shown that he is entitled to any relief.

## II. RECOMMENDATION

Based on the foregoing, it is recommended that petitioner's petition for writ of habeas corpus, and any other relief requested, be denied.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until January 30, 2014. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until January  30 , 2014, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and is hereby returned to the docket of the United States District Judge.

SIGNED January  9 , 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

9